**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
11/10/2006
Log Number 511638915

**TO:** Mark J LeHocky, Esquire
Dreyer's Grand Ice Cream, Inc.
5929 College Avenue
Oakland, CA, 94618-

**RE:** **Process Served in Kentucky**

**FOR:** EDY'S GRAND ICE CREAM (Domestic State: CA)

RECEIVED
NOV 1 3 2006

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** Ice Cream Distributors of Evansville, LLC, Pltf. vs. Edy's Grand Ice Cream, Inc., Dft.

**DOCUMENT(S) SERVED:** Civil Summons, Complaint

**COURT/AGENCY:** Oldham County Circuit Court of Kentucky, KY
Case # 06-CI-831

**NATURE OF ACTION:** Tortious Interference with Contract; Tortious Interference with prospective economic advantage

**ON WHOM PROCESS WAS SERVED:** C T Corporation System, Louisville, KY

**DATE AND HOUR OF SERVICE:** By Certified Mail on 11/10/2006 postmarked on 11/09/2006

**APPEARANCE OR ANSWER DUE:** within 20 days

**ATTORNEY(S) / SENDER(S):** Jeffrey A Calabrese
Stoll Keenon Ogden PLLC
2000 PNC Plaza
500 W Jefferson St
Louisville, KY, 40202
502.333.6000

**ACTION ITEMS:** SOP Papers with Transmittal, via Fed Ex 2 Day, 791165117057

**SIGNED:**
**ADDRESS:** C T Corporation System
1511 Kentucky Home Life Building
Louisville, KY, 40202
**TELEPHONE:** 502-587-5960

Page 1 of 1 / MR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

| AOC-105<br>Rev. 5-03<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.kycourts.net<br>CR 4.02; CR Official Form 1<br>Doc. Code: CI<br>11/3/2006 01:34 pm<br>Ver. 1.01 | **CIVIL SUMMONS** | Case No. 06-CI-00831<br>Court ☑ Circuit ☐ District<br>County Oldham |

ICE CREAM DISTRIBUTORS OF EVANSVILLE, LLC                                                    PLAINTIFF
10430 DRIVER DR.

EVANSVILLE                    Indiana

EDY'S GRAND ICE CREAM, INC.                                                                   DEFENDANT
5929 COLLEGE AVE.

OAKLAND                       California

Service of Process Agent for Defendant:
CT CORPORATION SYSTEM, INC.
KENTUCKY HOME LIFE BUILDING

LOUISVILLE                    Kentucky              40202

TO COMMONWEALTH OF KENTUCKY
THE ABOVE-NAMED DEFENDANT(S):

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf and filed in the Clerk's Office within 20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

11-09, 2006                By: _Lindsay G. Mason_ Clerk
                                          _____ D.C.

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

this _____ day of _____, 2____.

Served by: _____

_____ Title

COMMONWEALTH OF KENTUCKY
OLDHAM CIRCUIT COURT
NO. 06-CI-00831
JUDGE _____

ICE CREAM DISTRIBUTORS OF
EVANSVILLE, LLC

                       **PLAINTIFF**

v.

**COMPLAINT**

EDY'S GRAND ICE CREAM, INC.,
c/o CT Corporation System, Inc.
Kentucky Home Life Building
Louisville, Kentucky 40202

                        **DEFENDANT**



FILED
NOV 0 9 2006

  Plaintiff, Ice Cream Distributors of Evansville, LLC, an Indiana limited liability corporation ("ICD"), through its counsel of record, Stoll Keenon Ogden PLLC, and as its Complaint against Edy's Grand Ice Cream, Inc., a Delaware corporation ("Edy's"), states as follows:

## PARTIES

1. Plaintiff, ICD, is an Indiana limited liability corporation licensed to do business in Kentucky, with its principal place of business located at 10430 Driver Drive, Evansville, Indiana, and with a facility at 6230 Old LaGrange Road, Crestwood, Oldham County, Kentucky.

2. Defendant Edy's is a Delaware corporation licensed to do business in Kentucky, with its principal place of business located at 5929 College Avenue, Oakland, California.

## JURISDICTION AND VENUE

3. Jurisdiction and venue in this Court is proper because most of the actions which are the subject matter of this Complaint occurred in Kentucky, because both ICD and Edy's conduct substantial business operations in Oldham County, Kentucky, and because the amount in controversy exceeds the jurisdictional minimum for this court.

1

## BACKGROUND

4. ICD is engaged in the business of selling and distributing various ice cream products, such as Unilever USA's "Good Humor" novelty ice cream products and Edy's "Edy's" brand ice cream products, to various grocery and convenience stores in Illinois, Indiana and Kentucky.

5. Edy's is engaged in the business of manufacturing and selling ice cream products, such as the "Edy's" brand ice cream, in the United States and throughout the world.

6. In June 2003, Edy's was acquired by Nestlé Holdings, Inc. ("Nestlé").

7. Thereafter, Edy's also marketed Nestlé ice cream products, including Nestlé novelty ice cream products, which compete directly with Unilever USA's Good Humor novelty ice cream products.

8. ICD was a distributor of Edy's products in Illinois, Indiana and Kentucky.

9. In 2004, ICD sold approximately $4,400,000 annually in Edy's ice cream products to its grocery store customers.

10. In June or early July 2004, ICD was approached by Mark Hagan of Edy's, who asked ICD to discontinue its sale of Good Humor novelty ice cream products to its Louisville customers and convert such sales to Nestlé's novelty ice cream products.

11. Converting ICD's sales of Good Humor novelty ice cream products to Nestlé novelty ice cream products would have required ICD to terminate its contract for the sale of Good Humor novelty ice cream products, which would have resulted in a loss of $1,500,000 in annual sales of such products and $600,000 of profit annually.

12. Concerned with the business impact of exclusively selling and distributing Edy's products to its customers, ICD requested that Edy's present ICD with a proposal which would

2

compensate ICD for the loss of $1,500,000 in annual sales of Good Humor novelty ice cream products and the associated risk of ICD selling the products of a single manufacturer, Nestlé.

13. Edy's failed to provide ICD with such a proposal but continued to repeatedly request that ICD convert its sales of Good Humor novelty ice cream products to its Louisville customers to Nestlé's novelty ice cream products.

14. In response to each additional request from Edy's, ICD would repeat its request for a proposal in writing from Edy's prior to ICD terminating its agreement to sell Good Humor novelty ice cream products.

15. Edy's never presented ICD with such a proposal, even though Edy's repeatedly promised to do so.

16. In December 2005, after ICD refused to terminate its contract for the sale of Good Humor novelty ice cream products, Edy's advised ICD that it would no longer sell, nor allow ICD to distribute, Edy's ice cream products to ICD's customers.

17. Edy's advised ICD that it was discontinuing its sales and distribution of ice cream products through ICD because Edy's intended to "put its own trucks on the street" and sell its products directly to ICD's customers.

18. As a result of such decision by Edy's, ICD would lose in excess of $4,400,000 in annual sales of Edy's products.

## COUNT I

### TORTIOUS INTERFERENCE WITH CONTRACT
(Southern Belle Diary)

19. ICD repeats and realleges paragraphs 1 through 18 as paragraph 19 of Count I of the Complaint.

3

20. On August 30, 2004, ICD and Southern Belle Dairy ("Southern Belle") entered into a Purchasing and Distribution Agreement ("Agreement"), whereby the parties agreed, among other things, that Southern Belle and ICD would not expand their ice cream sales and distribution in certain designated counties in Kentucky in which the other party sold and distributed ice cream products.

21. In addition, the parties agreed that ICD would become the exclusive distributor of Southern Belle ice cream products in counties assigned to ICD.

22. As part of the consideration for such Agreement, both ICD and Southern Belle surrendered certain customers to the other in the counties in which they could no longer operate pursuant to the Agreement.

23. As a result of the Agreement, ICD had a reasonable expectation of economic gain in that ICD did approximately $750,000 in annual sales of Southern Belle ice cream products in the counties in which it operated, which generated approximately $230,000 in profits.

24. Thereafter, Edy's began a course of conduct which was intended to disrupt ICD's relationship with Southern Belle in that Edy's approached Southern Belle and requested that Southern Belle sell and distribute Edy's products to the customers previously serviced by ICD in the counties in which Southern Belle was not allowed to operate as a result of the Agreement.

25. Southern Belle subsequently terminated the Agreement so that it would be able to distribute Edy's products to ICD's former customers.

26. By engaging in the conduct described above, Edy's intended to impair and/or destroy ICD's business relationship with Southern Belle, thereby destroying ICD's expectancy of economic gain.

4

27. Edy's engaged in the interfering conduct with malice toward ICD, and a desire to injure ICD economically, and with a wantoness and disregard of ICD's rights as a result of ICD's refusal to convert its Good Humor novelty ice cream product sales to Edy's Nestle's novelty ice cream products.

28. Edy's conduct was improper, unlawful, and unfair, in that it was designed to induce Southern Belle to terminate its Agreement with ICD after ICD had spent considerable time, resources and money to develop a relationship which resulted in the Agreement.

29. Edy's conduct was the proximate cause of the loss and/or impairment of ICD's business relationship with Southern Belle and the termination of the Agreement, which resulted in the loss of the expectancy of the economic gain ICD would have received from the Agreement.

30. As a result of the impairment and/or loss of ICD's business relationship with Southern Belle, ICD suffered a loss of economic expectancy arising from the Agreement in the amount of $230,000 annually, which was the annual profit ICD received from the sale of Southern Belle ice cream products.

31. Edy's was not justified or privileged in engaging in such conduct which resulted in the impairment and termination of the Agreement.

## COUNT II
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Southern Belle Diary)

32. ICD repeats and realleges paragraphs 1 through 18 as paragraph 32 of Count II of the Complaint.

5

33. In March 2005, ICD approached Southern Belle regarding the acquisition of Southern Belle's Ice Cream Division.

34. Thereafter and continuing through December 2005, ICD and Southern Belle engaged in a series of meetings and exchanged certain information with the intent of entering an agreement regarding ICD's acquisition of Southern Belle's Ice Cream Division.

35. In December 2005, after Edy's advised ICD that Edy's would no longer allow ICD to sell and distribute Edy's ice cream products, ICD was forced to abandon its negotiations regarding the acquisition of Southern Belle's Ice Cream Division and began negotiations with Southern Belle regarding a sales and distribution agreement.

36. The sales and distribution agreement would obligate Southern Belle to out source all its ice cream product sales and distribution, including its sales and distribution of Edy's and Nestle's ice cream products, to ICD in exchange for an "up charge" payment by ICD to Southern Belle.

37. Pursuant to said negotiations, ICD had a reasonable expectation of economic gain in that ICD would have generated and received monies as a result of the sale and distribution of Southern Belle's ice cream products to Southern Belle's customers.

38. In December 2005, however, Edy's began a course of conduct which was intended to disrupt ICD's relationship with Southern Belle and which prevented ICD from entering into a sale and distribution agreement with Southern Belle.

39. On information and belief, when Edy's learned that ICD was negotiating with Southern Belle to take over the sales and distribution of Southern Belle's ice cream products, Edy's advised Southern Belle that it would not allow Southern Belle to sell and distribute Edy's products if Southern Belle entered into a sales and distribution agreement with ICD.

6

40. On information and belief, Edy's engaged in such conduct because ICD refused to discontinue its sale of Good Humor novelty ice cream products to its customers and convert such sales to Nestlé's novelty ice cream products.

41. By engaging in the conduct described above, Edy's intended to impair and/or destroy ICD's business relationship with Southern Belle, thereby destroying ICD's expectancy of economic gain.

42. Edy's engaged in the interfering conduct with malice toward ICD, and a desire to injure ICD economically, and with a wantoness and disregard of ICD's rights as a result of ICD's refusal to convert its Good Humor novelty ice cream product sales to Edy's Nestlé's novelty ice cream products.

43. Edy's conduct was improper, unlawful, and unfair, in that it was designed to induce Southern Belle to refuse to enter into a sale and distribution contract with ICD after ICD had spent considerable time, resources and money to develop a relationship which resulted in the Agreement and the proposed sales and distribution contract being negotiated by Southern Belle and ICD.

44. Edy's conduct was the proximate cause of the loss and/or impairment of ICD's business relationship with Southern Belle, which resulted in the loss of the expectancy of the economic gain it would have received from the sales and distribution contract being negotiated by Southern Belle and ICD.

45. As a result of the impairment and/or loss of ICD's business relationship with Southern Belle, ICD suffered a loss of economic expectancy arising from the sales and distribution contract being negotiated by Southern Belle and ICD in the amount of $1,300,000

annually, which was the estimated lost profit on the annual sales of Southern Belle ice cream products by ICD.

46. Edy's was not justified or privileged in engaging in such conduct which resulted in the impairment and/or loss of the sales and distribution contract being negotiated by Southern Belle and ICD.

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Convenience Store Customers)

47. ICD repeats and realleges paragraphs 1 through 18 as paragraph 47 of Count I of the Complaint.

48. Thereafter, Edy's began a course of conduct which was intended to disrupt ICD's relationship with its convenience store customers and prevent ICD from obtaining future sales of ice cream products to such customers.

49. After Edy's advised ICD that Edy's would no longer allow ICD to sell and distribute Edy's ice cream products, Edy's, through its agents, made certain false and misleading statements to ICD's customers indicating that ICD was going out of business, or was experiencing various business problems.

50. For example, Edy's advised:

   a. Walgreens, which is located in Deerfield, Illinois, and has been a customer of ICD for 3 years, that the reason Edy's was no longer allowing ICD to sell and distribute Edy's products was ICD was experiencing performance problems.

   b. Speedway, which is located in Dayton, Ohio, and has been a customer of ICD for 2 years, that the reason Edy's was no longer allowing ICD to sell and distribute Edy's products was ICD was not paying its bills.

8

    c.    Airport Grocery, which is located in Lexington, Kentucky, and has been a customer of ICD for 3 years, that ICD would no longer be able to service their business needs.

    d.    Dishman Shell, which is located in Richmond, Kentucky, and has been a customer of ICD for 3 years, that ICD was going out of business.

    e.    Super Mercado, which is located in Lexington, Kentucky, and has been a customer of ICD for 2 years, that Edy's was the company with whom such customer had always done business.

    f.    J&D Market, which is located in Lexington, Kentucky, and has been a customer of ICD for 6 years, that ICD had changed its name to Edy's.

    g.    Daughtery's Marathon, which is located in Jeffersonville Kentucky, and has been a customer of ICD for 3 years, that ICD was no longer in business.

    h.    B&D Marathon, which is located in Richmond, Kentucky, and has been a customer of ICD for 3 years, that ICD was going out of business.

51. On information and belief, Edy's made similar statements to Estepp Shell, Osbourne Shell, Gaunce's Market, Hamburg Shell, Hardy BP, Rite-Aid and Redi-Mart.

52. Edy's additionally hired two ICD employees who had confidential information regarding ICD's convenience store customers to solicit sales of Edy's ice cream products from ICD's convenience store customers.

53. At the time that Edy's engaged in such conduct, Edy's knew of ICD's business relationship with its convenience store customers, and that ICD had reasonable expectancy of continuing it business relationship with such customers.

54. By engaging in the conduct described in paragraphs 49 through 53, Edy's intended to impair and/or destroy ICD's business relationship with its convenience store customers, including those customers listed in paragraph 50, thereby destroying ICD's expectancy of economic gain.

9

55. Edy's engaged in the interfering conduct with malice toward ICD, and a desire to injure ICD economically, and with a wantoness and disregard of ICD's rights as a result of ICD's refusal to convert its Good Humor novelty ice cream product sale to Edy's Nestle's novelty ice cream products.

56. Edy's conduct was improper, unlawful, and unfair, in that it was designed to induce ICD's convenience store customers, including those set forth in paragraph 50, to terminate their business relationship with ICD and no longer purchase ice cream products from ICD after ICD had spent considerable time, resources and money to develop a relationship with its convenience store customers so that they would purchase ice cream products from ICD.

57. Edy's conduct was the proximate cause of the loss and/or impairment of ICD's business relationship with its convenience store customers, including those set forth in paragraph 50, which resulted in the loss of the expectancy of the economic gain it would have received from the sales and distribution of ice cream products to such convenience store customers.

58. As a result of the impairment and/or loss of ICD's business relationship with the above named customers, ICD suffered a loss of economic expectancy arising from the sales and distribution of ice cream products to such customers in the amount of $100,250.00.

59. Edy's was not justified or privileged in engaging in such conduct which resulted in the impairment and/or loss of the sales of ice cream products to ICD's convenience store customers.

***

WHEREFORE, ICD prays that judgment be entered in favor of ICD and against Edy's as to Count I as follows:

a. Compensatory damages for the value of the business opportunity, or expectancy, that was lost as a result of Edy's tortious and improper interference in the amount of $230,000, annually;

b. Punitive damages in an amount to be proven at trial;

c. Trial by jury on all triable issues of fact; and

d. Such further and other relief as the Court deems reasonable and just; and

WHEREFORE, ICD prays that judgment be entered in favor of ICD and against Edy's as to Count II as follows:

a. Compensatory damages for the value of the business opportunity, or expectancy, that was lost as a result of Edy's tortious and improper interference in the amount of $1,300,000 annually;

b. Punitive damages in an amount to be proven at trial;

c. Trial by jury on all triable issues of fact; and

d. Such further and other relief as the Court deems reasonable and just; and

WHEREFORE, Ice Cream Distributors, LLC, prays that judgment be entered in favor of ICD and against Edy's as to Count III as follows:

a. Compensatory damages for the value of the business opportunity, or expectancy, that was lost as a result of Edy's tortious and improper interference in the amount of $100,250.00;

b. Punitive damages in an amount to be proven at trial;

c. Trial by jury on all triable issues of fact; and

d. Such further and other relief as the Court deems reasonable and just.

DATED: November 9, 2006

                                              Respectfully,

                                              Thomas M. Williams
                                              Jeffrey A. Calabrese
                                              STOLL KEENON OGDEN PLLC
                                              2000 PNC Plaza
                                              500 W. Jefferson Street
                                              Louisville, Kentucky 40202
                                              Phone: (502) 333-6000

                                              *Attorneys for Plaintiff Ice Cream*
                                              *Distributors of Evansville, LLC*

LOU 108049/125124/452450.1